J-S31014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| H.T.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.B.S. N/K/A N.B.G. | : | No. 1757 WDA 2018 |

Appeal from the Order Entered November 7, 2018
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 1127 of 2017-D

BEFORE: OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: FILED AUGUST 16, 2019

Appellant, H.T.R. (hereinafter, Father), appeals from the order entered on November 7, 2018, which granted N.B.S., n/k/a, N.B.G. (hereinafter, Mother) primary physical custody and continued shared legal custody of the parties' daughter, B.M.R. (hereinafter, Child) (born in May of 2005). We affirm.

We briefly summarize the facts and procedural history of this case as follows. Mother and Father met in January 2004 when Father's family moved from southwest Pennsylvania to Florida. At the time, Mother was 15 years old; Father was 17 years old. Mother and Father began an intimate relationship in April 2004. In September 2004, upon learning that Mother was pregnant, Mother and Father cohabited in Brooksville, Florida. Child was born in May 2005. The parties separated in October 2005 and, after court

proceedings, mutual Protection from Abuse (PFA) orders were entered. Father received primary physical custody of Child.

Father moved in with his parents in Fayette County, Pennsylvania. Mother moved in with her brother in Springhill, Florida. In March 2006, Father and Mother reconciled and resumed residing together in Brooksville, Florida and the mutual PFAs were dismissed without prejudice. Later that year, Mother and Father moved to Fayette County, Pennsylvania near Father's parents (hereinafter, Paternal Grandparents) for better commercial truck driving opportunities for Father. Mother enrolled in classes at the International Academy of Design Technology in Pittsburgh, Pennsylvania. When Mother was attending school and Father was pursuing employment as a truck driver, Paternal Grandparents cared for Child.

In June 2007, during a verbal altercation, Father grabbed Mother by the neck and forced her against a wall in front of Child. Mother told Father that she was leaving and taking Child back to Florida. The next day, Paternal Grandparents took Mother and Child to the airport. The following day, Father called Mother in Florida to apologize and reconcile. During that conversation, the parties agreed that Father could take custody of Child on July 4, 2007, to attend a family member's graduation party in Pennsylvania. Father agreed to return Child to Mother on July 12, 2007, as memorialized in a notarized document signed by the parties, but he did not. Instead, Father filed a complaint for custody in Fayette County, Pennsylvania. After thwarted attempts to contact Child, Mother returned to Pennsylvania on July 22, 2007.

Mother resided at a domestic violence shelter in Uniontown, Pennsylvania and, with the assistance of a domestic violence agency, resumed continuing contact with Child via a temporary consent order entered in September 2007.

On December 17, 2007, following a full custody hearing in Fayette County, Pennsylvania, the trial court awarded the parties shared legal and physical custody on a six-month basis based on Child's young age and the distance between Florida and Pennsylvania. The trial court issued an opinion regarding its decision on December 5, 2008. This Court affirmed that decision in an unpublished memorandum on April 6, 2009. See H.T.R. v. N.B.S., 974 A.2d 1202 (Pa. Super. 2009) (unpublished memorandum). On September 3, 2010, the trial court entered an order modifying custody, awarding Father physical custody of Child during the school year and physical custody to Mother during summer and holiday vacations from school.[1]

On June 30, 2017, after Father moved to Westmoreland County and resided there for more than five years, this case was transferred from Fayette County to Westmoreland County. On December 20, 2017, Father filed a petition for modification of custody in Westmoreland County, seeking to reduce Mother's custody of Child during Thanksgiving and Christmas holidays from annually to bi-annually. Mother responded that Child expressed a desire to reside with Mother and to attend school in Florida. Accordingly, Mother

_____

[1] The trial court notes, and our independent review confirms, that the modification order is docketed in Fayette County docket, but there was no hearing beforehand. The order was entered in response to a "priority motion" filed by Father. Trial Court Opinion, 11/7/2018, at 2 n.3.

proposed that the parties "flip" their custody schedules so that Father would exercise custody of Child during summers and holidays and Mother would exercise custody of Child during the school year.   On June 6, 2018, the trial court appointed an attorney as guardian ad litem to represent Child.   The trial court held a bench trial on August 17, 2018.   In camera, the trial court also interviewed Child, who was then 13-years-old. At the conclusion of the proceedings, the trial court entered an interim order that awarded shared legal custody to the parties, but awarded Mother primary physical custody of Child and stated that Mother could enroll Child in school in Florida.  The trial court's interim order gave Father partial physical custody of Child, but reserved scheduling for a subsequent order.

The trial court entered a final order, with an accompanying opinion, on November 7, 2018 that granted Mother sole legal custody and primary physical custody of Child.   The order further granted Father partial physical custody during Child's summer and Christmas breaks from school.   Pertinent to this appeal, in its November 7, 2018 opinion, the trial court considered the 16 factors regarding custody as set forth at 23 Pa.C.S.A. § 5328(a), but ultimately determined that "the factor which weighed most heavily was [C]hild's preference to live with her mother, as it was compelling under the

facts of this case." Trial Court Opinion, 11/7/2018, at 1. Father's timely appeal resulted.[2]

On appeal, Father raises the following issues for our review:

1. Did the [trial c]ourt err and abuse its discretion by failing to adequately and appropriately apply the [16] factors set forth in 23 Pa.C.S.A. § 5328(a) to consider when awarding primary physical custody to [Mother] with prejudice?

2. Did the [trial c]ourt err and abuse its discretion by failing to adequately deliberate on the sixteen (16) factors set forth in 23 Pa.C.S.A. § 5328(a) to determine custody?

3. Did the [trial c]ourt err in transferring primary custody of minor child from [Father] to [Mother], along with erring in granting the relocation of minor child from Pennsylvania to live with [Mother] in the [s]tate of Florida?

4. Did the [trial c]ourt err and abuse its discretion by stating [Mother] was a better fit for minor child?

5. Did the [trial c]ourt err in not taking into consideration the tremendous benefits minor child has in Pennsylvania with her Father and [Paternal Grandparents]?

6. Did the [trial c]ourt err in failing to adequately address the mental and physical conditions of [Mother's current] spouse and his family?

7. Did the [trial c]ourt err in failing to adequately address each party's ability and availability to provide proper and consistent care for the minor child?

_____

[2] Father filed a notice of appeal on December 5, 2018 and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925 on December 21, 2018. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on February 22, 2019 that briefly addressed the nine issues presented by Father, but largely relied upon its earlier decision issued on November 7, 2018, as well as the original custody decision from Fayette County rendered on December 5, 2008.

8. Did the [trial c]ourt err in failing to adequately address each party's ability to care for the daily physical, emotional, developmental, educational, and special needs of the minor child?

9. Did the [trial c]ourt err and abuse its discretion by relying on the testimony of the [g]uardian [a]d-[l]item who had never met the minor child before the trial and had only a conversation via telephone with minor child and [Mother]?

Father's Brief, at 2-4.[3]

Our standard of review regarding custody decisions is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

We have stated:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

[W]e [have] stated the following regarding an abuse of discretion standard:

_____

[3] We slightly reordered Father's issues for ease of discussion.

- 6 -

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

With any custody case decided [], the paramount concern is the best interests of the child. 23 Pa.C.S.A. §§ 5328, 5338.

*          *          *

Section 5338 of the [Child Custody] Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the sixteen best-interest factors that the trial court must consider.[4]  Trial courts are required to consider all of the factors listed in section 5328(a) when entering a custody order.

---

4  The sixteen factors set forth in Section 5328 are as follows:

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

- 7 -

Further, we have explained:

> Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record in open court or in

_____

> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

a written opinion or order. Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen section 5328(a) custody factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with section 5323(d).

S.S. v. T.J., 2019 WL 2416994, at *6–7 (Pa. Super. filed June 10, 2019)

(most internal citations and all quotations omitted) (emphasis in original).

In his first two issues presented, Father contends that the trial court did not adequately consider the 16 factors set forth under section 5323(a). More specifically, Father argues:

[T]he trial court failed to appropriately and adequately consider all of the factors and the evidence presented during trial set forth in section 5328(a) and based its decision almost exclusively on one issue that [C]hild was mature enough to decide [with whom she wished to live primarily], and that the parties had difficulty communicating with each other, and [Father] was more financially secure.

Father's Brief at 12 (emphasis in original). He suggests that we either reverse the award of primary physical custody to Mother or remand the case for further fact-finding. Id. at 13. Father asserts that trial court "rushed to issue" the interim order "immediately and without deliberation of the sixteen factors" and that it should have "continued the status quo until it reviewed the transcript of the entire custody trial" to see contradictions in Child's testimony and to check Mother's testimony for accuracy. Id. at 63-64. However, Father

acknowledges that the trial court "discussed the sixteen factors and presented its rationale [] in support of its award of primary physical custody of [C]hild to [Mother]" in its subsequent final order and accompanying opinion. Id. at 13.

Here, we summarily reject Father's argument that the trial court rushed to judgment without adequately considering the required factors for making a custody determination. The trial court was not required to make a detailed finding on the record following the custody trial. As Father acknowledges, the trial court's subsequent opinion systematically lists and examines each section 5328 factor individually and opines whether the evidence presented militated in favor of either, or neither, party. Moreover, there is no dispute that the trial court issued its November 7, 2018 opinion simultaneously with the final order and, therefore, the trial court discussed all 16 custody factors prior to the deadline by which Father was required to file a notice of appeal. As such, we see no error of law or abuse of discretion in the manner in which the trial court rendered its decision and Father's first two issues fail.

Next, in issues three through eight as set forth above, Father challenges the trial court's consideration of the facts and evidence under several section 5328 factors.[5] Regarding the first factor, encouraging contact, Father challenges the trial court's determination that Father "leverage[d] his superior position to minimize [M]other's connections [to Child.]" Father's Brief at 13.

_____

[5] Many of Father's arguments are repetitive and overarching. We will summarize and consolidate the arguments for ease of discussion and brevity.

In support of his claim, Father points out that he and his current wife, Child's stepmother (Stepmother), testified that they encouraged Child to keep in contact with Mother. Father's Brief at 13-16. Regarding the second factor, present or past abuse, Father contests the trial court's finding that "the record [was] replete with episodes of household upheaval and fighting by [F]ather[,] while [M]other demonstrated superior emotional control." Id. at 18. Father claims he only admitted to a single altercation with Stepmother and that Stepmother and her mother testified consistently with his position at trial. Id. at 18-20. Father further contends that Mother "was arrested because of an altercation with [Father] when she was living with him in Florida and was charged with a misdemeanor for domestic battery." Id. at 20. Moreover, Father claims that the police responded to his family's residence on only one occasion. Id. at 21-22. Father challenges the trial court's determination that Mother is "[C]hild's closest, most important, emotional support" citing testimony regarding an incident wherein a student showed Child's friend a firearm at their school in Pennsylvania, Father told Mother, but Mother never followed up. Id. at 22-24. Next, citing the distance between Father's Pennsylvania residence and Mother's Florida home, Father "disputes the trial court's analysis" that Child can maintain her connections with Father's other children, Child's half-siblings. Id. at 25-26. Father argues that the trial court effectively punished him because he is the more financially successful party and can afford to shoulder transportation costs. Id. at 47-48. Regarding attempts of a parent to turn Child against the other parent, Father claims that

the trial court erred when it decided that Father "leveraged his superior financial position to make matters more difficult than necessary for [M]other." Id. at 43. Father claims that he submitted evidence showing that he has provided the more stable, consistent and nurturing relationship with Child and that he is the party more likely to attend to Child's daily needs. Id. at 44-47. Regarding the willingness to communicate with one another, Father posits that the trial court erred in finding in favor of Mother because Mother "did not communicate with [Father] directly but preferred to deal with [paternal grandfather] instead." Id. at 49. In examining the history of drug and alcohol abuse of a party's household, Father argues that "while many of [Mother's] relatives who are in contact or could be in contact with [C]hild have been arrested for drug use and have spent time in jail, [Father] has offered evidence and the record is replete with testimony that proves not one member of [Father's] family has ever used drugs, nor has anyone been arrested and/or served time in jail for doing so." Id. at 50-52. Father complains that Child would have to provide some caregiving to her wheelchair confined stepfather, but that Father's "family does not suffer from any mental or physical conditions[.]" Id. at 54; 72-74.

The majority of Father's argument pertaining to the 16 section 5328 custody factors, however, focusses on the trial court's determination that Child's preference for living with Mother should prevail. Father's Brief at 26-42. More specifically, Father challenges the trial court's finding that Child's "maturity, insight and judgment exceeded her years and her expectations are

credible and convincing (and supported by other testimony), and her preference is entitled to great weight." Id. at 26-27. Citing psychological data and pointing to testimony he presented at trial, Father contends that "[t]he record clearly reflects that [C]hild's level of maturity as reflected in her reading, conceptual thinking, abstract thinking and memorization skills [were] below level for a thirteen[-]year[-]old." Id. at 32. Father further argues that Child cannot differentiate between lying and telling the truth. Id. at 32-40.

Based upon our standard of review and after a careful review of the record, we reject Father's suggestion that we substitute our judgment for the trial court's decision regarding application of the 16 custody factors. Here, the trial court adequately explained its findings in a detailed opinion that specifically addressed each of the individual factors necessary for rendering a custody decision. Upon review of the transcripts of testimony from the custody trial, we conclude that the trial court's decision was supported by competent evidence in the record. Because we may only reject the conclusions of the trial court when they involve an error of law or are unreasonable in light of the sustainable findings of the trial court, we affirm the trial court's determination herein. C.R.F., 45 A.3d at 443.

In his last issue as set forth above, Father argues that the trial judge and the court-appointed guardian ad litem devised an ex parte custody plan

in violation of 207 Pa. Code Rule 2.9.[6]  Father's Brief at 67-72.  Although not raised in the questions presented section of his appellate brief, Father also contends that, at the end of the custody trial, the trial court contemplated ordering a psychological examination of Child, but did not mandate it in its final order.  Id. at 76-77.  Finally, we note in conjunction with his arguments about Child's maturity and her ability to tell the truth, Father argues that during her in camera interview, "[C]hild was never sworn in or instructed to tell the truth, nor did the trial court find out if she understood the consequences of lying to the court before she began her testimony."  Id. at 40.  Father, however, did not raise these issues in his Rule 1925(b) statement. We cannot address them on appeal and, hence, we are constrained to find them waived.    See Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) (citation omitted) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."); see also Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

For all of the foregoing reasons, we affirm the trial court's modification of custody.

Order affirmed.

_____

[6]  Father originally framed this issue around the fact that Child did not meet the guardian ad litem physically until trial and that the guardian ad litem only spoke with Child via a single telephone call.  On appeal, while he mentions this fact, he does not argue error with regard to the amount of contact between Child and the guardian ad litem.  See Father's Brief at 67-72.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/16/2019</u>